STATE EX REL. MORTGAGE AND TRUST CO. v. GODFREY, AUD.

1. LIEN AND RIGHT OF ACTION FOR TAXES SUPERIOR TO PRIVATE INTERESTS.
   The lien of taxes on land in favor of the state and the right of the state to proceed to the collection thereof, in manner provided by law, are paramount to the ownership or interests of private parties, and are not affected by the circumstance that a suit may be pending to foreclose and extinguish the title of the owner.

2. PURCHASER AT TAX SALE NOT AFFECTED BY FORECLOSURE.
   The rights, therefore, of a purchaser at a tax sale are not affected by a subsequent decree of foreclosure although the proceedings were instituted prior to and were pending at the time of the tax sale. As to such purchaser the rules of *lis pendens* do not apply, and to his lien or title acquired from the state the effects of *lis pendens* do not attach.

3. RELATION SAME AS IF CONVEYANCE WAS VOLUNTARY.
   A purchaser at sheriff's sale, under the foreclosure, is not, upon presentation of his deed to the county auditor, and tendering the fee required by law, entitled to have the property transferred to his name upon the tax list before the rights of the purchaser at the tax sale are extinguished. The purchaser at sheriff's sale stands in the same position with respect to the tax sale and the rights acquired thereunder, as he would if a voluntary conveyance had been made to him by the owner of the fee.

4. ANY OTHER RULE WOULD DEFEAT THE STATUTE.
   To permit the grantee under a sheriff's deed to have the property transferred to his name on the tax duplicate before the rights of the purchaser at the tax sale have been extinguished, would be to annul the provisions of sec. 2888, Rev. Stat., and defeat the purpose of that statute, which is to give the holder of the tax certificate some advantage or standing with respect to the inchoate title which he acquires by the tax sale, to the end that the state may more readily collect its taxes by this procedure.

MANDAMUS.

PARKER, J.

This is an action in mandamus, begun in this court, to compel the auditor of Lucas county to enter upon the tax duplicate a transfer of certain real estate. The petition sets forth: That the plaintiff is a corporation; that Godfrey is the auditor of Lucas county, Ohio; that on September 10, 1897, Mary T. Henahan and Michael Henahan were, and for four years prior thereto had been, and until July 10, 1899, continued to be, the owners in fee simple of certain real estate described in the petition; that, to secure the payment of a promissory note, the said Mary T. Henehan and Michael Henehan, on said September 10, 1897, executed and delivered to relator their mortgage deed, covering said property,

State ex rel. v. Godfrey.

which was duly recorded in the office of the recorder of Lucas county, Ohio.

That, the condition of said mortgage having been broken, relator, in the month of October, 1898, filed its petition in the court of common pleas of Lucas county, Ohio, in a suit against said Mary T. Henahan and Michael Henahan, praying for the foreclosure of said mortgage and the sale of said property. That they were duly served with summons, and at the April term, 1899, of said court, a decree of foreclosure was rendered; and that in pursuance of said decree, the sheriff of said county, on June 17, 1899, sold said property to the relator. That said sale was afterwards duly confirmed by the court and said sheriff ordered to execute and deliver a deed to the relator conveying the property, and that this was done on July 10, 1899.

Relator further says, that on January 17, 1899 ˀa date prior to the sheriff's sale and prior to the decree of foreclosure, at a sale of lands for delinquent taxes, held by the treasurer of Lucas county, Ohio, the said treasurer sold said property to one Charles H. Wiltsie, and the said William M. Godfrey, auditor of said county as aforesaid, issued to said Wiltsie certificates of purchase of said property.

Relator further says, that on the tax duplicates in the office of the auditor of said county for each of the years 1897 and 1898, said property stood in the names of said Mary T. Henahan and Michael Henahan; but that said auditor, immediately after the delivery of said certificates of purchase, transferred said property on his duplicate for 1898 into the name of said Charles H. Wiltsie, the purchaser, as required by sec. 2888, Rev. Stat.; that said transfer was made by said auditor by stamping the words and letters, "Chas. H. Wiltsie, T. T., 1899" on said duplicate on the same lines with the names of said Mary T. Henahan and Michael Henahan.

That on September 21, 1899, relator duly applied to the said William M. Godfrey, county auditor as aforesaid, to have the property transferred on the tax list into the name of relator, the owner thereof, at the same time presenting the deed executed by the sheriff as aforesaid showing title in relator, and exhibiting to said auditor the record of said suit, and at the same time tendering the fee required by law. That said county auditor refused and still refuses to transfer said property into the name of relator, the owner thereof, to the great injury of relator. That the sole ground of refusal by said county auditor to so transfer said property was and is that the said property has been transferred into the name of said Charles H. Wiltsie, the purchaser at said tax sale. And relator says that said Charles H. Wiltsie has no title to said property; that he is not the owner thereof; that two years have not elapsed since the delinquent tax sale of said property at which said Wiltsie purchased the same, nor has the county auditor executed or delivered any deed for said property to said Wiltsie.

Wherefore, relator prays that a writ of mandamus issue, commanding said William M. Godfrey, auditor of the county of Lucas as aforesaid, on receipt of the fee prescribed therefor, to transfer said property on the tax list into the name of relator and to indorse on said sheriff's deed (when presented for that purpose) that the proper transfer has been made in his office.

To this petition a general demurrer has been filed.

The statutes upon the subject of the transfer of land upon the tax duplicates, prescribing the duties of the county auditor and recorder, are secs. 1025, 2888 and 1159, Rev. Stat.

Section 1025, Rev. Stat., reads as follows:

"The auditor shall, on application and presentation of title, with such affidavits as are required by law, or the proper order of a court, transfer any land or town lot, or part thereof, charged with taxes on the tax list, from the name in which it stands, into the name of the owner, when rendered necessary by any conveyance, partition, devise, descent, or otherwise; and if, by reason of the conveyance or otherwise, a part only of any tract or lot, as charged on the tax list, is to be transferred, the party or parties desiring the transfer shall make satisfactory proof of the value of such part as compared with the valuation of the whole, as charged on the tax list, before the transfer is made; and the auditor shall indorse on the deed or other evidences of title presented to him, that the proper transfer of the real estate therein described has been made in his office, or that the same is not entered for taxation, and sign his name thereto."

Section 1159, Rev. Stat., provides:

"The recorder shall not record any deed of absolute conveyance of land until the same has been presented to the county auditor, and by him indorsed 'Transferred,' or 'Transfer not necessary.' "

It is under those provisions, especially the provision of sec. 1025, that the relator claims the right to have his deed from the sheriff transferred, or to have the transfer made upon the tax duplicate in pursuance of that deed.

Section 2888, Rev. Stat., reads as follows:

"Every county auditor hereafter delivering any certificate of purchase of forfeited lands, or delinquent lands sold for taxes, shall immediately, on his duplicate, transfer the same into the name of the purchaser, charging therefor the sum of ten cents, which shall be considered part of the expenses of the sale; and if any county auditor shall neglect to make such transfer, he shall be liable to action by any person injured thereby as for a neglect of official duty."

It is conceded by relator, that the auditor, in making the transfer to the purchaser at the tax sale, has proceeded strictly as he is directed and required to proceed by sec. 2888, Rev. Stat., but, relator claims that, notwithstanding such regular and proper action, upon his subsequently bringing his deed to the attention of the auditor, and showing that he had acquired the title of the Hehanans to this property, through the foreclosure proceedings and sale, he was entitled to have the transfer made into his (relator's) name.

If what the relator contends for may be done, the same result would follow from a voluntary conveyance from the Henahans to the relator after sale for taxes and certificates issued, unless the rights of the holder of the certificate or the duties of the auditor in the premises are affected in some way by the foreclosure proceedings. In other words, if, instead of there being a foreclosure involving the right and title of the Henahans after this tax sale and issue of the certificate, and transfer to the purchaser at the tax sale, the Henahans had made a voluntary conveyance of this property to the relator, he might then have gone to the auditor and required the transfer to be made in pursuance of that deed, unless, as we say, some effect is to be given to the foreclosure proceeding different from that which would

State ex rel. v. Godfrey.

result from a voluntary conveyance. So far as the mortgagor is concerned, his title is conveyed and his rights are extinguished by either his voluntary conveyance or the foreclosure—the same in the one case as in the other. The rights of the grantee of the mortgagor are, as against the mortgagor, not greater nor less, nor in any respect different, from those of the grantor in the deed of the sheriff, made in pursuance of the foreclosure, assuming that the foreclosure proceedings are in all respects regular and valid.

To allow either the grantor of the mortgagor or the grantee under the deed of the sheriff, to have the property transferred into his name on the tax duplicate before the rights of the purchaser at the tax sale have been extinguished, would be, as it seems to us, to annul the express provisions of sec. 2888, Rev. Stat., and defeat the purpose of that statute, which seems to be to give the holder of the tax certificate some advantage or standing with respect to the inchoate title which he acquires by the tax sale, to the end that the state may more readily collect its taxes by this procedure, that is to say, to the end that persons will be more ready to make purchases at tax sales.

It will be noted that there is no provision for transferring the property into the name of the purchaser at the tax sale at any other time, or upon the happening of any other event, as, for instance, upon his receiving a deed after the expiration of two years from date of sale, without redemption. It is to be done upon the presentation of title, that is, evidence of title, and in the case of such purchaser the provisions of sec. 2888, Rev. Stat., are to the effect that the only evidence of title necessary shall be the sale and certificate. The requirement of the performance of this duty is, as will be noted, made mandatory, and its non-performance subjects the auditor to such penalties or liabilities as arise upon neglect of official duties.

Does the foreclosure proceeding affect the rights of the purchaser at the tax sale, or the duty of the auditor in the premises? That it does not, has been determined, as we think, by the Supreme Court in Ketcham v. Fitch, 13 Ohio St., 201.

Valentine H. Ketcham brought an action against Simeon Fitch and Esther M. Fitch, on December 24, 1859, to foreclose a mortgage upon certain real estate in the city of Toledo. The taxes upon the mortgaged property for the year 1858, were not paid, and in 1859 the property was charged upon the tax duplicate with the taxes of the year 1859 and the taxes of 1858, with the statutory penalty consequent upon the delinquency. On January 9, 1860, the property was sold at delinquent tax sale, to Joseph K. Secor, for $587.86. A decree of foreclosure in favor of Ketcham was entered on January 23, 1860. It will be noted that while these taxes were delinquent at the time the suit was begun, there had not yet been a tax sale of the property, but sale was made on account of delinquent taxes before the decree was entered, so that the case as to those facts is like the case at bar. The property was sold and an order of distribution was entered, requiring the payment of costs, the payment of the amount due to Ketcham on his mortgage and the balance to Esther M. Fitch—the title appears to have been in the wife. From this order of distribution Ketcham appealed to the district court. At the April term, 1860, of that court, he appeared, and asked leave to file a supplemental petition, setting forth the sale to Secor for taxes, and asking that Secor be made a party to the suit, and the amount of his claim upon the property ascertained and paid out of the proceeds of the

sale. Secor also, was at the same time present in court by his attorney, and offered to enter his appearance and file an answer to the supplemental petition, and a cross-petition setting up his purchase at tax sale and asking to be paid out of the proceeds of the sale under the judgment, the amount of the purchase money advanced by him at the tax sale, with the interest from January 9, 1860, and a penalty of fifty per cent. on the amount advanced. At the same time both Ketcham and Secor moved the court to order a payment to Secor out of the proceeds of the sale, of the amount paid by him for, the purchase at tax sale, with the accruing interest and penalty. The court refused leave to file the supplemental petition, and answer and cross-petition of Secor; and also refused to order the payment of any portion of the amount claimed by Secor, on account of his tax purchase; and did order the payment to Mrs. Fitch of all the surplus proceeds of the sale, after paying the claim of Ketcham and the costs.

On account of this, Ketcham prosecuted error; but the judgment of the district court was affirmed, and it was held by the Supreme Court, that while taxes standing upon the tax duplicate, charged against the property, might be paid from the proceeds of the sale— taxes standing charged at the date of the sale—the claim arising upon the sale for delinquent taxes could not be discharged out of the proceeds, unless the owner of tax title was made a party and came in and set up his claim. That as to such a claim, the rule *caveat emptor* applies; that the purchaser is supposed to take into consideration the fact that there is an outstanding lien that he will be required to discharge in addition to paying the purchase price of the property. The court say, on page 209:

"But the amount payable to the purchaser at tax sale would depend upon the regularity of the proceedings under which he claims. He must, therefore, be made a party, and the amount of his claim ascertained by an investigation of those proceedings. If all this can be done, after the judicial sale has been effected and confirmed, the result would be the application of the proceeds of sale not to the payment of taxes, but to discharge of incumbrances owned and held by persons who were strangers to the whole proceeding at the time of sale, and the existence of whose claims may have prevented the land from selling at a higher price.

"Prudent men, acting upon the maxim *caveat emptor*, would take such incumbrances into the account, and unless the law was well understood to mean what it does not say, would graduate their bids accordingly.

"When creditors desire to sell lands of their debtor, free from incumbrances, justice to him requires that the incumbrances should be made parties to the proceedings, before the order of sale. Such has always been the law, and a majority of the court think the statute in question leaves it unchanged, except as to taxes and penaalties thereon standing unpaid upon the duplicate."

So that we cannot see but that the purchaser at the tax sale in the case at bar stands in precisely the same situation 'with respect to the property, with the same rights, as if a voluntary conveyance had been made by the Henahans to the relator after such tax sale. The lien of taxes on land, in favor of the state, and the right of the state to proceed to the collection thereof, in the mode provided by law, are paramount to the ownership or interests of private parties and are not affected by the circumstance that a suit may be pending to foreclose and

*State ex rel. v. Godfrey.*

extinguish the title of the owner. It is not necessary or proper to make officers, upon whom the duty devolves to collect these revenues, or the state, or political bodies, to which these revenues go, parties defendant in the action. The government and its officers are not to be hindered, delayed or obstructed in proceeding according to law to collect taxes for the support of the government, by the litigation of private persons, with respect to rights and interests subordinate to the claims of the state.

To hold otherwise would be to read into the tax laws important conditions and limitations not appearing there, and would be wholly unauthorized. Such provisions would make it easy by fictitious or long drawn out litigation to defeat the evident and proper policy of the state, that is, to make prompt collection of its revenues. That this is not permissible and is wholly obnoxious to the policy of the law, is evident from many provisions of the tax laws and from their general scope and obvious policy. The rights of the purchaser at a tax sale under circumstances like those set forth here, are not affected by the foreclosure of the mortgage. We think that is a necessary conclusion to be drawn from the holding in Ketcham v. Fitch, *supra*. As to such purchases the rules of *lis pendens* do not apply, and to his lien or title acquired from the state the effect of *lis pendens* do not attach. We conclude, therefore, that the right of the holder of the tax certificate, and the duty of the auditor under sec. 2888, Rev. Stat., to transfer the property into his name upon the tax duplicate, are not in any way affected or changed by the foreclosure proceedings. The demurrer will be sustained and the writ refused. The petition will be dismissed and judgment given against the relator for costs.

*Swayne, Hayes & Tyler*, for relator.

*Charles E. Sumner*, for defendant.

---

## HUSBAND AND WIFE — ALIMONY — DOWER — FRAUD.

[Lucas Circuit Court, January 25, 1898.]

King, Haynes and Norris, JJ.

(Judge Norris sitting in the place of Judge Parker.)